No. 62,711

No. 62,712

STATE FARM FIRE AND CASUALTY COMPANY, An Insurance Corporation, *Appellant*, v. GORDON FINNEY and DEAN JOHNSON, *Appellees*, and GORDON FINNEY, *Appellee*, v. DEAN JOHNSON, *Defendant*, v. STATE FARM FIRE AND CASUALTY COMPANY, Proposed Intervenor, *Appellant*.

(770 P.2d 460)

Opinion filed March 3, 1989.

*Jerome V. Bales*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, argued the cause and *Kevin Bennett*, of the same firm, was with him on the briefs for appellant.

*John L. White*, of Norton, White & Norton, P.C., of Leavenworth, argued the cause and was on the brief for appellee.

*David P. Troup*, of Weary, Davis, Henry, Struebing & Troup, of Junction City, was on the *amicus curiae* brief for Kansas Trial Lawyers Association.

The opinion of the court was delivered by

LOCKETT, J.: *State Farm Fire & Casualty Co. v. Gordon Finney and Dean Johnson*, Case No. 62,711, and *Gordon Finney v. Dean Johnson v. State Farm and Casualty Company, Proposed Intervenor*, Case No. 62,712, are consolidated for appeal. In the first action, State Farm Fire & Casualty Co. (State Farm) appeals the

district court's finding that an insurer may not maintain a declaratory judgment action to determine if there is coverage for the acts of its insured if the declaratory judgment also decides key factual issues in an underlying tort suit brought against the insured. In the second action, State Farm appeals the district court's denial of its motion to intervene in the underlying tort suit to stay that action until the declaratory judgment action was decided.

On January 22, 1988, Gordon Finney brought an action in Leavenworth County District Court against Dean Johnson claiming that on July 2, 1987, Johnson shot him with a gun either (1) willfully, wantonly, maliciously, and intentionally or (2) negligently. At the time of the incident, Johnson was insured under a homeowners policy issued by appellant, State Farm. The policy provided coverage for personal liability and medical payments under "coverages L and M," but contained the following exclusion:

"1. Coverage L and Coverage M do not apply to:
a. <u>Bodily injury</u> or property damage which is expected or intended by an insured."

After being notified that Finney had filed suit against its insured, State Farm provided Johnson with an attorney. Pursuant to a reservation of rights, State Farm also notified Johnson that, under the policy exclusion, it was denying coverage for intentional or expected acts.

On February 24, 1988, State Farm filed a declaratory judgment action asking the district court to determine that there was no coverage under the policy for the acts alleged in the civil tort suit and, therefore, State Farm had no contractual duty to defend Johnson. At a discovery conference, counsel provided for Johnson requested that State Farm's declaratory judgment action be stayed pending the outcome of the civil tort suit. The district court requested briefs and oral argument. At a subsequent hearing, State Farm argued that the declaratory judgment action should not be stayed because, under its interpretation of our holding in *Patrons Mut. Ins. Ass'n v. Harmon,* 240 Kan. 707, 732 P.2d 741 (1987), it would be collaterally estopped to raise its policy defense (non-coverage for intentional acts) by a judgment in the civil tort suit.

The district court disagreed with State Farm's interpretation of

*Patrons* and held that, under *Bell v. Tilton*, 234 Kan. 461, 674 P.2d 468 (1983), where an insurer provides an attorney to defend its insured in a pending action, while reserving its policy defenses, that attorney's defense of the action does not estop the insurer from asserting its policy defense in a subsequent civil proceeding. Counsel for Johnson then orally moved to dismiss the declaratory judgment action, contending that a declaratory judgment action cannot be maintained to decide key factual issues to be determined in the underlying tort suit, citing *U.S. Fidelity & Guaranty Co. v. Continental Ins. Co.*, 216 Kan. 5, 531 P.2d 9 (1975), and *State Automobile & Casualty Underwriters v. Gardiner*, 189 Kan. 544, 370 P.2d 91 (1962). The district court sustained Johnson's motion and dismissed the declaratory judgment action. State Farm appealed.

State Farm then filed a motion seeking to intervene in the tort action to stay the civil action and to allow the declaratory judgment action to proceed to trial first. Noting that the declaratory judgment action had been dismissed prior to State Farm's motion to intervene and that, under *Bell*, a judgment in the civil tort action would not impede State Farm's right to protect its interest in a subsequent action, the district judge denied the motion. Despite the district court's favorable ruling that State Farm would not be estopped to litigate its policy defenses in the civil tort action, State Farm appeals the dismissal of the declaratory judgment and the denial of its motion to intervene in the civil tort action. Although the denial of its motion to intervene in the civil action was originally an issue on appeal, State Farm has abandoned that issue since it was neither addressed in the briefs nor at oral argument. *Feldt v. Union Ins. Co.*, 240 Kan. 108, 112, 726 P.2d 1341 (1986).

It is State Farm's position that its declaratory judgment action is necessary because our holding in *Patrons* reversed *Bell* and precluded State Farm from having its day in court. State Farm framed its first issue as "[w]hether an insurance carrier who is defending an individual in a lawsuit pursuant to a reservation of rights is collaterally estopped to assert policy defenses in a subsequent action when such policy defenses raise essentially the same factual issues decided in the underlying litigation."

Rejecting State Farm's position, the district court held *Patrons* did not overrule *Bell*. Therefore, we must first review *Bell* and

*Patrons.* In *Bell,* plaintiff sued for injuries suffered as a result of a gunshot wound inflicted by an insured. The defendant made a demand on his insurer to defend under his homeowners policy. The insurer provided counsel for the defendant, but informed the insured that, pursuant to a policy exclusion for intentional acts, it was reserving its rights to assert its policy defenses at a later time.

In the tort case, the jury found that the insured had negligently shot and injured the plaintiff and awarded the plaintiff money damages. At a subsequent garnishment proceeding, the insurer disclaimed liability under the policy exclusion for intentional acts of its insured. The plaintiff contended that the insurer was collaterally estopped to assert this defense in the garnishment action. The trial court ruled in favor of the insurer and we affirmed, holding that where an insurance company provides an attorney to defend its insured against a pending action, while reserving its policy defenses, that attorney's defense of the action does not estop the insurance company from asserting its policy defenses in a subsequent garnishment proceeding. *Bell v. Tilton,* 234 Kan. 461, Syl. ¶ 1.

The facts were different in *Patrons.* There, a husband fatally shot his wife. A jury found that the husband had intentionally caused the death of his wife and returned a verdict of voluntary manslaughter. Meanwhile, their son filed a wrongful death action against his father, claiming that the father had negligently caused the death of the mother. The father/husband requested his insurer, Patrons, to defend him under his homeowners policy. Patrons refused to provide an attorney to defend the husband in the civil action and filed a declaratory judgment action denying coverage on three grounds, including a policy exclusion for intentional acts. Prior to a determination in the declaratory judgment action, the wrongful death action proceeded to a jury trial and the judge found as a matter of law that the shooting was negligent. Later, in the declaratory judgment action, the trial court found Patrons had failed to provide its insured an attorney to defend the civil action and to reserve its rights under its policy, and was collaterally estopped by the judgment in the civil action from relitigating the issue of its insured's intent in a subsequent action. We agreed, finding:

"Because Patrons was in privity with a party, [the insured], in the wrongful death

action, it was bound by that judgment. An exception to the rule would allow Patrons, the insurer, to refuse to defend its insured in the original action and, if the insured lost, would allow the insurer to relitigate the same issue against its insured in a subsequent action." 240 Kan. at 711.

State Farm claims that this statement overruled *Bell*. This claim ignores our subsequent language in *Patrons*, which limited that holding to cases where the insurance company *refuses to defend its insured*. After observing that the interest of the insured and the insurer were adverse in *Patrons*, we stated:

"In *Bell v. Tilton*, [citation omitted], there was a conflict of interest between the insured and the insurer in a civil action. The insurance company hired independent counsel to defend the insured in the civil action and notified the insured that it was reserving its rights under the policy. This procedure protects both the insured's and the insurer's interests and rights and eliminates the necessity of multiple suits to determine the same issues. *We believe this is the proper procedure to protect the rights of both parties under their contract."* 240 Kan. at 712. (Emphasis added.)

In *Bell*, because there was a potential of liability, we found it proper that the insurance company honored its contractual duty to defend its insured while it retained the right to raise the policy defenses later. Any other rule would create an ethical conflict for the insurer by allowing the insurer to defend its insured, and, in the same action, to claim that the insured's act was excluded from coverage under the insurance contract. *Bell* and *Patrons* encourage insurers to fulfill their contractual duty to defend the insured where there may be a legitimate question of coverage. This procedure protects the interest of the insured and the insurer because it does not bind the insurer to the factual determination of the underlying tort action and allows a subsequent action to determine if the insured's act is covered by the policy. *Patrons* clearly approves our holding in *Bell*. Therefore, the trial court properly found that our determination of the collateral estoppel issue in *Patrons* was limited to those cases where the insurance company refuses to defend its insured in the civil tort action. Here, since State Farm provided an attorney to defend its insured and reserved its policy defenses, the declaratory judgment action is not necessary to preserve its day in court.

For its second issue, State Farm argues that the district court erred in dismissing its declaratory judgment action. State Farm concedes that there is no absolute right to maintain a declaratory

judgment action and that the granting of declaratory relief usually rests in the trial court's discretion. See *U.S. Fidelity & Guaranty Co. v. Continental Ins. Co.*, 216 Kan. 5, 9, 531 P.2d 9 (1975).

When ruling that a declaratory judgment action may not be maintained to decide key factual issues in an underlying action, the district court relied on two cases: *U.S. Fidelity & Guaranty Co. v. Continental Ins. Co.*, 216 Kan. 9, and *State Automobile & Casualty Underwriters v. Gardiner*, 189 Kan. 544. *Gardiner* involved an underlying tort and wrongful death action filed as a result of an automobile accident where the driver of the insured vehicle, Gardiner, was a friend of the insured, Mulder. The insurance policy provided coverage for the insured and anyone driving the car with the insured's permission.

Denying coverage, the insurer filed a declaratory judgment action alleging Gardiner had driven the insured vehicle without Mulder's permission. The district court held for the insurance company and we reversed, stating we would not permit the company to obtain by declaratory judgment a predetermination of at least one very cogent issue of the tort actions, since this is not the purpose for seeking relief by a declaratory judgment action. 189 Kan. at 547.

*U.S. Fidelity* involved a declaratory judgment action seeking determination of insurance coverage between two insurance companies for damages resulting from an automobile accident. The vehicle in question was driven by a friend of the owner's son. U.S. Fidelity had issued a policy covering a vehicle owned by the driver's parents. Continental had issued a policy to the owners of the vehicle involved in the accident which excluded coverage for persons driving without the insured's permission. After the driver of the other car involved in the accident filed a tort action to recover for his injuries, Continental denied coverage pursuant to the policy exclusion.

Subsequently, U.S. Fidelity, the driver, and the driver's father brought a declaratory judgment action against Continental and the owner of the vehicle. The trial court dismissed the declaratory judgment action, refusing to determine a factual issue which was also a key issue in the underlying tort suit (whether the driver had permission to drive the car), especially since the insurers could be impleaded in the tort action. We affirmed,

holding that *ordinarily* declaratory judgment actions should not be maintained where a question of fact is the main issue or where the object of the action is to try such fact as a determinative issue. 216 Kan. at 10.

In oral argument of the case at bar, State Farm acknowledged that, under the Kansas rule, declaratory judgment actions may not be maintained to decide key factual issues in underlying actions. State Farm argues that, in a proper case, allowing the declaratory judgment to proceed first would promote judicial economy, citing *Stout v. Grain Dealers Mutual Insurance Company*, 307 F.2d 521 (4th Cir. 1962), and *Metro. Property & Liability Ins. Co. v. Kirkwood*, 729 F.2d 61 (lst Cir. 1974). In *Kirkwood*, the First Circuit reasoned that the litigation will proceed with significantly greater efficiency if the declaratory judgment action is tried first. Because the basic issue in the declaratory judgment is not whether there is liability, but whether the insurer's contractual liability flows from a negligent act or is excluded because the insured's act was intentional, that issue can be tried directly in the declaratory judgment action. The court noted that trial by jury is available and a decision binds all parties. 729 F.2d at 63. Without commenting on the constitutional right of the insured not to testify in a declaratory judgment action during the pendency of a criminal action or on the fact that in either situation there are two lawsuits—(1) a declaratory judgment to determine coverage under the policy and (2) a civil suit to determine liability of the insured to the plaintiff—the First Circuit found no disadvantage to the plaintiffs in the underlying tort action by maintenance of the declaratory judgment suit.

A more persuasive analysis of this issue is found in *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 347 A.2d 842 (1975). *Brohawn* involved an underlying tort suit for injuries suffered in an assault. The complaint alleged in the alternative that the defendant acted either intentionally or negligently. The defendant's insurance policy contained an exclusion for intentional acts. Subsequently, the insurer filed a declaratory judgment action alleging that the insured's acts were intentional and requesting the court to relieve it from its obligation to defend.

After the circuit court denied declaratory relief and ordered the insurer to defend, the insurer appealed. The Court of Special

Appeals reversed, holding that the issue of intent should be decided first in the declaratory judgment suit and that the determination of this issue would be res judicata in the pending tort suit, leaving only the question of damages to be decided in the tort suit. The Maryland Court of Appeals granted the insured's writ of certiorari and reversed.

Initially, the court noted that, in certain circumstances, maintenance of a declaratory judgment action prior to trial of the underlying tort action could be a valuable means of resolving policy questions "where those questions are independent and separable from the claims asserted in the pending suit." For example, where an insurer claims lack of coverage because of the insured's failure to comply with contract provisions or to pay premiums, a declaratory judgment action would ordinarily be appropriate. 276 Md. at 405.

The court distinguished the cases where the issues to be resolved in the declaratory judgment action would be fully resolved in the tort action and elaborated on factors for a court to consider when deciding whether to grant declaratory relief in a particular case. It determined that, if the granting of the judgment in the declaratory judgment action would unduly inconvenience or burden the parties, or allow one party to wrest control of the litigation from another and cause a confusing alteration of the burden of proof, the court should refuse to grant the relief sought. By determining the question of whether the injuries were intentionally inflicted in the declaratory judgment action, the court would allow the defendant's insurer, not the plaintiff in the tort action, to control the litigation. 276 Md. at 406.

*Hartford Ins. Group v. District Court,* 625 P.2d 1013 (Colo. 1981), is also instructive. In *Hartford,* the underlying tort suit involved a vehicular accident between two tractor-trailer trucks. After suit alleging negligence was filed by the driver of one of the trucks against the other driver and his employer, Hartford, the employer's insurer, indicated it would provide a defense pursuant to a reservation of rights. The policy in question excluded intentional acts and acts by an employee outside the scope of the employer's permission.

Subsequently, Hartford filed a declaratory judgment action asserting it was not obligated under the policy since the driver's acts were intentional and outside the scope of authority or

permission as extended by the employer. The trial judge ordered a stay of the declaratory judgment action, pending the outcome of the underlying tort suit. Hartford then filed an original proceeding in the Supreme Court of Colorado requesting an order prohibiting the stay. The Supreme Court denied the request. Rejecting Hartford's argument that maintenance of the declaratory judgment action would promote judicial economy, the Colorado Supreme Court agreed that an insurer could, in some cases, seek a declaration of its contractual responsibility of defense and indemnification in connection with a claim filed against a person arguably qualifying as an "insured." However, here, the resolution of the declaratory action first might well place the insured in the dilemma of defending the coverage issue by establishing that the conduct, at most, amounted to simple negligence. Defending the declaratory action on that basis would pose a substantial risk that the insured would unduly compromise its defense in the negligence action. In addition, a finding in the declaratory action that the insured's action was willful and wanton could cause the plaintiff in the negligence action to amend his complaint to assert willful and wanton conduct against the defendant and invoke the doctrine of collateral estoppel. 625 P.2d at 1016.

*Brohawn* and *Hartford* demonstrate that prejudice to the insured may result by requiring the insured to litigate the key issues in the underlying suit in a declaratory judgment action against his own insurance company. First, the insured may be bound by the declaratory judgment suit by principles of collateral estoppel. Second, since the issue in the declaratory judgment action is whether the insured's acts were intentional or negligent, the insured may be prejudiced by being forced into claiming the acts were *merely* negligent to insure coverage under the insurance policy.

State Farm argues that a factual determination of the issues in a declaratory judgment action does not prejudice the insurer or the insured. We disagree. The duty to defend and the duty to cover are not necessarily coextensive. The duty to defend arises whenever there is a "potential of liability" under the policy. *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 512 P.2d 403 (1973). The insurer determines if there is a potential of liability under the policy by examining the allega-

tions in the complaint and considering any facts brought to its attention or which it could reasonably discover. Where a petition alleges an act that is clearly not covered, for example, that the defendant acted willfully and intentionally, a declaratory judgment would then be proper to determine the issue of coverage, since there would no "potential of liability" under the policy for intentional acts. Where the complaint alleges both a negligent and intentional act, these alleged facts give rise to the potential for liability and the duty to defend arises. 212 Kan. at 686.

Here, if it is determined in the underlying civil tort suit that the insured acted neither negligently, willfully, nor intentionally, there would be no need for a second action to determine if there was coverage under the policy. If the tort suit determines that the insured acted negligently, the insurer would not be collaterally estopped to litigate the intent issue in a subsequent proceeding. The trial court correctly held this procedure protects the rights of all parties.

Affirmed.