**UNITED WATS, INC., Timothy A. Barton, and David H. Ferdman, Plaintiffs,**

v.

**CINCINNATI INSURANCE COMPANY, Defendant.**

**Civil Action No. 96–2376–GTV.**

United States District Court, D. Kansas.

July 8, 1997.

Kathleen A. Hardee, Bruce B. Waugh, Gilliland & Hayes, P.A., Kansas City, MO, for United Wats Inc., Timothy A. Barton, David H. Ferdman.

John E. Franke, Lawrence P. Warshaw, Franke & Schultz, P.C., Kansas City, MO, for Cincinnati Ins. Co.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

Plaintiffs bring this action alleging that defendant breached its insurance contract by refusing to defend and indemnify plaintiffs on claims asserted against them in a state

court lawsuit in Johnson County, Kansas. The case is before the court on the following motions:

(1) plaintiffs' motion to dismiss (Doc. 7) defendant's counterclaim;

(2) plaintiffs' motion for summary judgment (Doc. 23); and

(3) defendant's motion for summary judgment (Doc. 27).

For the reasons set forth below, plaintiffs' motion to dismiss defendant's counterclaim is denied. With respect to the cross-motions for summary judgment, the court finds that defendant had a duty both to defend and indemnify plaintiffs in their state court lawsuit. The court further finds that plaintiffs are not entitled to any statutory attorney's fees.

*I. Factual Background*

Plaintiff United Wats operates its business by acting as a long distance service agent for its customers. The company evaluates its customers' long distance usage and then assigns them the long distance service that best suits their needs. On May 18, 1993, United Wats entered into an "Independent Contractor Marketing Agreement" (the "Marketing Agreement") with Coast International, Inc., a long distance provider that leases and resells long distance capacity from Sprint. Under this contract, United Wats agreed to serve as a commission-based independent marketing agent for Coast, soliciting individuals to transfer their long distance service to Coast. At the time it signed the agreement, United Wats itself did not serve as a long distance carrier; the company merely assigned its customers either to one of the major long distance telephone service networks (i.e., AT&T, MCI, and Sprint) or to one of the many "reseller" carriers that sell discounted excess long distance capacity purchased from the major networks.

In October 1994, United Wats became an authorized long distance "reseller" carrier. Shortly thereafter, the company began distributing letters of agency to its customers requesting that they authorize a transfer in long distance service from their present provider to United Wats. In the absence of an agreement to the contrary, such solicitations are legal. Coast, however, alleged that United Wats' usurpation of Coast's customers violated the parties' Marketing Agreement. Coast also alleged that United Wats had engaged in tortious conduct in the manner in which it pursued the service transfers.

According to plaintiffs, Coast, in response to United Wats' purported breach of the Marketing Agreement, began withholding United Wats' commissions and interfering with United Wats' customer relations. (Def.'s Mot. for Summ. J., Ex. G at 6–12). In April 1995, United Wats reacted to Coast's alleged actions by seeking a preliminary injunction against Coast in Johnson County, Kansas District Court. After a hearing, the court issued United Wats the requested injunctive relief.

Five months later, in the same underlying case, United Wats filed a petition against Coast and its president, Bijan Moaveni, alleging breach of contract, quantum meruit, conversion, and tortious interference with contract and prospective business relationships. (Def.'s Mot. for Summ. J., Ex. G). Coast then filed a counter-petition against United Wats and two United Wats executives—Timothy Barton and David Ferdman—alleging breach of contract, tortious interference with contract/business relations, conversion, breach of fiduciary duty, fraud, and contempt of court. (Def.'s Mot. for Summ. J., Ex. C). The court will refer to this litigation as "the Coast lawsuit."

On February 2, 1996, several months after receiving Coast's counter-petition, United Wats contacted Charlton Manley, Inc., a local insurance agency that had procured a Commercial General Liability Policy ("CGL Policy") from defendant Cincinnati Insurance Company on behalf of United Wats, and demanded coverage under the policy. Four days later, United Wats also notified Cincinnati Insurance Company directly and offered to provide any information necessary for its

consideration of the claim. United Wats included in its correspondence with defendant all pleadings that had been filed to date in the Coast lawsuit.

United Wats' CGL Policy provides, in relevant part, that defendant "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this coverage applies." (Def.'s Mot. for Summ. J., Ex. O at 3). Only "personal injury" coverage is at issue in the case at bar. Personal injury is defined under the policy as:

> injury, other than "bodily injury" arising out of one or more of the following offenses:
>
> . . .
>
> d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.

(Def.'s Mot. for Summ. J., Ex. O at 9). The CGL policy also contains several exclusions that limit the coverage for personal injury. Specifically, the policy states that no insurance shall be provided for personal injury:

> (1) Arising out of oral or written publication of material if done by or at the direction of the insured *with knowledge of its falsity;*
>
> (2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;
>
> (3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or
>
> (4) *For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.*

(Def.'s Mot. for Summ. J., Ex. O at 3) (emphasis added).

After waiting more than three months for a decision on its claim, United Wats wrote again to defendant on May 9, 1996, and requested a confirmation of coverage. On May 16, 1996, without ever having taken a statement from a United Wats representative, defendant's claims adjuster notified United Wats that its demand for defense and indemnification against Coast's counterclaims had been denied. Defendant contended that none of the damages Coast sought in its counter-petition met the definition of personal injury under United Wats' CGL Policy.

On May 21, 1996, United Wats' counsel wrote to defendant and requested a reconsideration of the coverage denial. Nine days later, United Wats' counsel forwarded to defendant's local attorneys a copy of the entire case file from the Coast lawsuit.

On June 25, 1996, United Wats' counsel notified defendant's counsel that the parties in the Coast lawsuit would be convening a settlement conference two days later. Although United Wats invited defendant to participate in the settlement negotiations, defendant declined to send a representative. On June 27, 1996, all litigants in the Coast lawsuit reached a settlement. United Wats faxed a copy of the proposed agreement to defendant and indicated that, unless defendant agreed to take over the defense and indemnify United Wats for any loss, United Wats would accept Coast's settlement offer. On July 25, 1996, having received no response from defendant to the fax, United Wats executed a settlement agreement in the Coast lawsuit.

Under the terms of the agreement, in return for Coast dropping its breach of contract counterclaim, United Wats authorized Coast to retain all commissions that Coast held in connection with the parties' Marketing Agreement. In addition, the parties resolved all of Coast's tort counterclaims by United Wats agreeing to pay $100,000 "as settlement of damages for Coast's tortious interference claim." (Pls.' Mot. for Summ. J., Ex. S at 2). The parties allocated no settlement funds to Coast's conversion, breach of fiduciary duty, fraud, or contempt of court counterclaims.

After signing the settlement agreement, United Wats made a final demand upon defendant for reconsideration of its claim denial. Apparently receiving no response, plaintiffs commenced this lawsuit on August 27, 1996, alleging that defendant breached the CGL Policy by refusing to defend and indemnify plaintiffs in the Coast lawsuit.[1] Defendant responded by filing a declaratory judgment counterclaim seeking a declaration that the CGL Policy does not cover the claims asserted against plaintiffs in the Coast lawsuit.

Additional facts will be provided as necessary.

## Discussion

### II. Plaintiffs' Motion to Dismiss Defendant's Counterclaim

■ Plaintiffs first contend that defendant's declaratory judgment counterclaim must be dismissed because it raises the same issues as plaintiffs' underlying claims. Citing *Continental Cas. Co. v. Robsac Indus.*, 947 F.2d 1367 (9th Cir.1991), plaintiffs argue that "[a]n insurance carrier cannot file an action in federal court seeking to determine the same rights as those sought by the insured in a state court action involving the same facts and issues." (Pls.' Mot. to Dismiss at 1). Plaintiffs' motion is without merit.

The *Robsac* holding was predicated on the court's desire to: (1) avoid having federal courts needlessly determine issues of state law; (2) discourage litigants from filing declaratory judgment actions as a means of forum shopping; and (3) avoid duplicative litigation. *Robsac*, 947 F.2d at 1371 (citing *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361 (9th Cir.1991) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942))). None of these concerns

are at issue in the case at bar because there is no pending state court action addressing the coverage of the controverted insurance contract. Moreover, declaratory judgment suits are well-suited to cases in which insurance companies seek a declaration of their liability. *See Horace Mann Ins. Co. v. Johnson*, 953 F.2d 575, 579 (10th Cir.1991). There is no reason why such actions may not be initiated in the form of a counterclaim. *Blue Cross & Blue Shield of Kan., Inc. v. St. Paul Mercury Ins. Co.*, No. 89–4114, 1990 WL 41403, at *1 (D.Kan. Mar.23, 1990) (citing *Iron Mountain Sec. Storage Corp. v. American Specialty Foods, Inc.*, 457 F.Supp. 1158, 1161–62 (E.D.Pa.1978)).

### III. Cross Motions for Summary Judgment

Both plaintiffs and defendant have filed motions for summary judgment on plaintiffs' claims. The court will address the motions together.

### A. Standards

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine

---

1. The plaintiffs in this action include both United Wats and the company's two executives whom Coast named as counter-petition defendants in the Coast lawsuit. Plaintiffs claim that the two executives are "additional insureds" under the CGL policy. Defendant insists that "additional insureds" is a term of art in the insurance industry and has no application to United Wats' executives. Defendant concedes, however, that agents of an insured, acting within the scope of their employment, are covered under the CGL Policy. All allegations against Barton and Friedman in the Coast lawsuit refer to activities performed in the course of their employment. The court, therefore, finds that Barton and Friedman are covered under the CGL Policy.

issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

The legal standard does not change if the parties file cross-motions for summary judgment. Each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as matter of law. *See Houghton v. Foremost Fin. Servs. Corp.,* 724 F.2d 112, 114 (10th Cir.1983). Although the court will not automatically decide the case at the summary judgment stage merely because the parties have filed cross-motions for summary judgment, *id.,* summary judgment is appropriate if there are no genuine issues of material fact.

### B. Choice of law

A federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). In Kansas, the construction of a contract is governed by the law of the state in which the contract was made. *Simms v. Metropolitan Life Ins. Co.,* 9 Kan.App.2d 640, 685 P.2d 321, 324 (1984). Because United Wats and Cincinnati Insurance Company entered into the CGL Policy in Kansas, the court will look to Kansas law in determining the scope of the insurance coverage.

### C. Merits

Plaintiffs argue that defendant breached the CGL Policy by refusing to defend and indemnify them in their lawsuit with Coast. Plaintiffs also contend that defendant's denial of their policy claim violated K.S.A. § 40–256, thereby entitling them to their attorney's fees in prosecuting this action. Defendant insists that it denied plaintiffs' claim because Coast's counterclaims fell outside the CGL Policy's coverage.

#### 1. Duty to Defend

Kansas law imposes a duty upon insurers to defend lawsuits initiated against their insureds "whenever there is a 'potential of liability' under the policy." *Bankwest.v. Fidelity & Deposit Co. of Maryland,* 63 F.3d 974, 978 (10th Cir.1995) (citing *State Farm & Cas. Co. v. Finney,* 244 Kan. 545, 770 P.2d 460, 466 (1989)). The assessment of whether such a liability potential exists must be predicated on both the allegations in the complaint as well as any additional facts that have been brought to the insurer's attention or that the insurer could have reasonably discovered. *Id.; American Motorists Ins. Co. v. General Host Corp.,* 946 F.2d 1489, 1490 (10th Cir. 1991). "So long as the insured can show a non-frivolous possibility that the claim against it may fall within the coverage of the insurance contract, the insurer has a duty to defend the insured." *American Motorists,* 946 F.2d at 1490. "The possibility of coverage may be remote, but if it exists the [insurance] company owes the insured a defense." *Id.* (alteration in original) (citing *Patrons Mut. Ins. Ass'n v. Harmon,* 240 Kan. 707, 732 P.2d 741, 744 (1987)).

#### a. Relationship between Breach of Contract and Tort Counterclaims

Defendant advances two arguments in support of its contention that it had no duty to defend plaintiffs in the Coast lawsuit. First, defendant avers that Coast's tort counterclaims were inextricably intertwined with its breach of contract counterclaim. All parties agree that breach of contract claims fall outside of the CGL Policy's coverage. Plaintiffs insist, however, that Coast's tortious interference with contract/business relations

counterclaim was independent of the breach of contract counterclaim.[2]

■ Under Kansas law, if a "dispute between two contracting parties arises out of or relates to their underlying agreement, the resulting claim of one party against the other arises out of the contract and may not be maintained as a tort action." *Beeson v. Erickson*, 22 Kan.App.2d 452, 917 P.2d 901, Syl. ¶ 3 (1996). Thus, damages are available in tort only if a party demonstrates that it suffered additional injury independent of its contract damages. *Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141 (10th Cir. 1988) (citing *Cornwell v. Jespersen*, 238 Kan. 110, 708 P.2d 515 (1985)). As the Kansas Supreme Court observed:

> The effect of confusing the concept of contractual duties, which are voluntarily bargained for, with the concept of tort duties, which are largely imposed by law, would be to nullify a substantial part of what the parties expressly bargained for—limited liability. Unless such bargains are against public policy, . . . there is no reason in fact or law to undermine them.
>
> . . .
>
> [I]t should not matter whether the breach of a bargained-for duty arises from inattention, a disagreement over the existence of the duty, a dispute over the nature of the duty, or a simple unwillingness to perform the duty. The parties by contract . . . have themselves defined the consequences of the breach. In the marketplace of contract, a breach is a breach is a breach—unless the parties choose to specify otherwise.

*Ford Motor Credit Company v. Suburban Ford*, 237 Kan. 195, 699 P.2d 992, 998–99 (1985) (citing *Isler v. Texas Oil & Gas Corp.*, 749 F.2d 22, 23–24 (10th Cir.1984)). Furthermore, a party may not convert a contract action into a tort action through the use of

legal semantics in an attempt to "escape the provisions of a bargain with which [it is] unhappy." *Beeson*, 917 P.2d at 905.

■ Plaintiffs concede that, in the absence of the Marketing Agreement, Coast would have had no legal objection to United Wats' soliciting individuals to switch long distance providers from Coast to United Wats. Plaintiffs maintain, however, that the alleged *manner* in which United Wats pursued the "switching" triggered tort claims that are independent of any possible breach of contract. The court agrees.

In its counter-petition, Coast alleged, *inter alia*, that United Wats had tortiously interfered with Coast's contracts and business relationships by making false, misleading, and disparaging statements to individuals utilizing Coast's long distance services. Consistent with Kansas' notice pleading rules, Coast outlined only broad and generalized allegations of United Wats' misrepresentations. (Def.'s Mot. for Summ. J., Ex. C at 2–6 & 8–9). Without additional evidence, many of those allegations could be characterized as contractual in nature. It is uncontroverted, however, that the scope of Coast's tortious interference-counterclaim was not limited to the factual averments in its counter-petition.

Several of the specific allegations that Coast officials articulated in correspondence with United Wats refer to events that, if proven, could have subjected United Wats to liability regardless of the Marketing Agreement. For example, in a March 30, 1995 letter to United Wats' attorney Kathleen Hardee, Coast's attorney James Ensz stated:

> [Coast] has become aware in responding to telephone calls inquiring of the notice sent by Coast that *[United Wats] employees are advising the customers that Coast is attempting to steal customers and defraud [United Wats]. Since such is untrue and involves the tort of slander,* you should

---

2. Neither side discusses the CGL Policy's possible coverage for Coast's conversion, breach of fiduciary duty, and fraud counterclaims. Because the court finds that defendant had a duty to defend plaintiffs based on Coast's tortious

interference with contract/business relations counterclaim, the court need not examine whether Coast's other tort counterclaims were independent of the breach of contract claim.

advise your client to instruct its employees to accurately inform the customer as to the status of affairs as is being done by [Coast]. Your officers are also making abusive telephone calls to [Coast] employees and are posing as customers in attempting to elicit information from [Coast]....

... Finally, I am attaching ... *[United Wats'] deceptive notice advising customers to change their credit cards so that [Coast] is deprived of the accounts of those making the change.*

(Pls.' Mot. for Summ. J. at ¶ 17 & Ex. F) (emphasis added). In addition, in an April 21, 1995 memorandum to Ensz, Coast president Bijan Moaveni contended that:

[United Wats] is continuing to *damage Coast by indicating to these customers that we are the "Bad Guys"* and they should not talk to us whatever the matter may be.

(Pls.' Mot. for Summ. J. at ¶ 17 & Ex. G) (emphasis added). In his deposition, Moaveni also alleged that United Wats' employees had made slanderous comments to Coast's customers suggesting that: (1) Coast was nothing more than United Wats' billing company; (2) United Wats had fired Coast; (3) Coast was attempting to steal United Wats' customers in retaliation for United Wats' purported action; and (4) Coast was a "bunch of crooks." (Pls.' Mot. for Summ. J. at ¶ 17 & Moaveni Dep. at 69).

■ The fact that Coast did not articulate these allegations in its counter-petition does not exclude them from consideration in assessing defendant's duty to defend plaintiffs. An insurer must look beyond the pleadings and consider any facts that a party brings to its attention or that it could discover reasonably on its own. *Spivey v. Safeco Ins. Co.*, 254 Kan. 237, 865 P.2d 182, 188 (1993); *Finney*, 770 P.2d at 466. Plaintiffs fully disclosed to defendant the extent of Coast's allegations. Throughout February 1996, in correspondence with both defendant and Charlton Manley, Inc., plaintiffs described in detail (often, with accompanying

evidentiary support) the incidents that formed the basis of Coast's counter-petition. (Pls.' Mot. for Summ. J. at ¶¶ 18–35). Nevertheless, defendant rejected plaintiffs' requests for coverage under the policy.

Defendant's refusal to defend is not supported by the applicable case law. The Tenth Circuit, construing an insurance provision nearly identical to the one at issue here, has held that a policy's reference to " 'the offense' of the publication of other defamatory or disparaging material is ... broad enough to include certain claims for intentional interference with contract." *Bankwest*, 63 F.3d at 980. The court observed that there are a number of ways in which interference with another's contractual rights can constitute tortious conduct and "making false representations is one such method." *Id.* (citations omitted). Coast's counter-petition allegations, as elucidated in its correspondence with United Wats' officials, go beyond mere breach of contract claims; Coast clearly alleged that plaintiffs had interfered with its contractual rights and business relations by publishing false statements to customers. These allegations created a "potential of liability" under the CGL Policy and, therefore, implicated defendant's duty to defend plaintiffs in the Coast lawsuit.

### b. Intentional Acts

■ Defendant next argues that, even if Coast's tort counter-claims were not intertwined with its breach of contract counter-claim, defendant had no duty to defend plaintiffs because plaintiffs had engaged in intentional misconduct. Defendant points out that the CGL Policy provides no coverage for personal injuries arising out of the oral or written publication of materials "done by or at the direction of the insured with knowledge of its falsity." This provision, however, did not absolve defendant of its duty to defend plaintiffs.

■ For purposes of determining whether a duty to defend exists, claims must be analyzed at the time the complaint is filed—not after a trial has been concluded or

a settlement reached. *American Motorists,* 946 F.2d at 1491. Even if the complaint alleges intentional acts not covered under the insurance contract, "[i]f knowledge reasonably ascertainable reveals the acts charged may not have been intentional, coverage may exist and the corollary duty to defend arises." *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.,* 212 Kan. 681, 512 P.2d 403, 407 (1973).

Throughout the pendency of the Coast lawsuit, United Wats denied that its employees had disseminated any misleading, disparaging, or defamatory information to Coast's customers. (Def.'s Mot. for Summ. J., Ex. D ¶¶ 7, 10, & 34). United Wats contended that the individuals it solicited to switch long distance carriers were its own customers to whom Coast had no legal relationship. (Pls.' Opp'n to Def.'s Mot. for Summ. J. at ¶ 34 & Barton Aff. ¶ 7). Although United Wats' act of switching Coast customers' long distance carriers was an intentional one, Kansas has recognized a distinction between an intentional injury and an unintended injury resulting from an intentional act. *Spruill Motors,* 512 P.2d at 408. "Coverage is avoided only when an act results in an intentional injury." *Id.* Viewing the facts as they were known at the time United Wats initially requested coverage under the CGL Policy, the court concludes that defendant did have a duty to defend plaintiffs in the Coast lawsuit.

### c. Reimbursable Fees and Expenses

Having concluded that defendant had a duty to defend plaintiffs against Coast's tortious interference counterclaim, the court now must determine an appropriate amount of fees and expenses to assess defendant. Plaintiffs contend they expended $20,583.02 defending the Coast lawsuit. Defendant objects to this figure, insisting that a sizable portion of those expenses reflect costs that plaintiffs incurred prosecuting the preliminary injunction application and defending against Coast's noncovered breach of contract counterclaim.

There is neither adequate briefing on this issue nor sufficient information in the record for the court to calculate independently how much of the $20,583.02 that plaintiffs seek is attributable to their defense of Coast's tortious interference counterclaim. Ideally, the parties will settle this dispute without the court's further involvement. If an agreement cannot be worked out, plaintiffs shall submit to the court on or before July 21, 1997, a cost breakdown reflecting the legal fees and expenses they incurred in defending against Coast's tortious interference counterclaim. Defendant may respond to plaintiffs' supplemental briefing on or before August 4, 1997.

### 2. Duty to Indemnify

An insurer's duty to indemnify is narrower in scope than its duty to defend. *Bankwest,* 63 F.3d at 978. "Although the duty to defend is determined by the allegations of the underlying complaint and by facts discoverable to the insurer, the duty to indemnify is determined by the facts as they are established at trial or as they are finally determined by some other means (e.g., summary judgment or settlement)." *Id.* (citations omitted). In settling the Coast lawsuit, plaintiffs and Coast agreed to resolve all of Coast's *tort* counterclaims by attributing all damages to Coast's tortious interference with contract/business relations claim. Defendants maintain that this settlement had the effect of legitimizing defendant's refusal to indemnify plaintiffs. The court disagrees.

Coast's tortious interference with contract/business relations claim is actually two claims combined into one. To prevail on a tortious interference with business relationship claim, a plaintiff must establish: (1) the existence of a business relationship or expectancy with the probability of future economic benefit; (2) the defendant had knowledge of the relationship; (3) but for the defendant's conduct, plaintiff, with reasonable certainty, would have continued the relationship or realized the expectancy; (4) the defendant engaged in intentional misconduct; and (5) the plaintiff suffered damages as a direct and proximate result of the defendant's misconduct. *Turner v. Halliburton Co.,* 240 Kan. 1,

722 P.2d 1106, 1115 (1986). Other than the need to demonstrate the existence of a contract, a tortious interference with contract claim involves virtually identical elements. See *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 872 P.2d 252, 257 (1994).

■. Defendant urges that because Coast's tortious interference claim necessitates a showing of intentional conduct, the claim falls outside the CGL Policy's coverage. Defendant is correct that "both tortious interference with a contract and tortious interference with contractual expectations or a prospective business advantage are predicated on malicious conduct by the defendant." *Id.* (citing *Turner*, 722 P.2d at 1115). Thus, if Coast had prevailed on its tortious interference claim after a trial, defendant would have no present obligation to indemnify plaintiffs.

The settlement between plaintiffs and Coast, however, obviated the need for Coast to establish the elements of its claims. Moreover, consistent with the intentional act/unintended injury distinction to which plaintiffs adhered throughout the litigation, the settlement terms specifically stated that nothing in the agreement "shall be construed as an admission of liability" and that both liability and damages remain "expressly disputed." (Def.'s Mot. for Summ. J., Ex. N at 6, ¶ 9). Defendant now appears to argue that, notwithstanding the settlement agreement, the court should assume that plaintiffs did engage in intentional and malicious conduct, and invoke that assumption to deny plaintiffs' request for·indemnification. The court rejects defendant's argument.

■ Once an insurer denies liability, the insured may enter into a settlement with a third party without prejudicing its rights against the insurer. *First Hays Banshares, Inc. v. Kansas Bankers Sur. Co.*, 244 Kan. 576, 769 P.2d 1184, 1189 (1989) (citation omitted). Additionally, if an insurer wrongfully refuses to defend a lawsuit against the insured on the grounds that a third-party's claim falls outside the policy's coverage, not only may the insured bring an action against the insurer, but the "insurer is bound by any reasonable compromise or settlement made by the insured." *Waugh v. American Cas. Co.*, 190 Kan. 725, 378 P.2d 170, 177 (1963). The reasoning behind the rule is that, having denied coverage under the policy, defendant "is in no position to criticize the settlement negotiations effected by plaintiff unless the amount paid in settlement is collusive." *Id.* (citation omitted). *Accord Dennis v. Southeastern Kan. Gas. Co.*, 227 Kan. 872, 610 P.2d 627, Syl. ¶ 2 (1980) ("Where an indemnitor has notice of a suit against [its] indemnitee and has been afforded an opportunity to appear and defend, a judgment rendered therein against the indemnitee, if without fraud and collusion, is conclusive against the indemnitor in respect to all questions therein determined.").

If defendant believed that plaintiffs had committed the intentional misconduct alleged in Coast's counter-petition and related correspondence, defendant could have defended plaintiffs under a reservation of rights. Defendant also could have accepted plaintiffs' invitation to participate in the Coast lawsuit's settlement negotiations. Defendant, however, pursued neither course.

In a last-minute attempt to avoid the terms of the settlement agreement, defendant now contends that plaintiffs and Coast "collusively" allocated their entire settlement to Coast's tortious interference with contract/business relations counter-claim. Defendant's argument appears to be based on its belief that Coast's counterclaims all sounded in contract, not tort, thereby making the settlement of any tort claim a sham. This argument is not persuasive. First, plaintiffs and Coast did not attribute their entire settlement to Coast's tortious interference counterclaim. Indeed, in return for Coast's agreement to dismiss its breach of contract counterclaim, the parties agreed to allow Coast to retain all outstanding commissions. Second, as the court explained previously, Coast's breach of contract and tort counterclaims were not inextricably intertwined. The settlement agreement, therefore, cannot be described as facially invalid

or unreasonable. Accordingly, the court finds that defendant must indemnify plaintiffs for the entire $100,000 settlement of the Coast lawsuit.

### 3. Attorney's Fees

 The final issue before the court is whether plaintiffs should be awarded their attorney's fees in defending the Coast lawsuit. Under Kansas law,

> in all actions ... in which judgment is rendered against any insurance company ..., it if appear [sic] from the evidence that such company ... has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action....

K.S.A. § 40–256. The determination of whether an insurance company has refused to pay a claim without just cause or excuse is a matter that depends on the facts and circumstances of a particular case. *Allied Mut. Ins. Co. v. Gordon,* 248 Kan. 715, 811 P.2d 1112, 1125 (1991). If there exists a good faith legal controversy over liability, attorney's fees must be denied. *Id.* Similarly, if an insurer has a bona fide and reasonable factual basis for refusing to pay a claim, no attorney's fees are available. *Id.* (citations omitted). "Denial of payment that is not arbitrary, capricious, or in bad faith will not give rise to an award of attorney fees." *Id.* (citation omitted).

 Plaintiffs first maintain that defendant failed to make an adequate inquiry into their policy claim and, therefore, did not engage in good faith conduct. The Kansas Supreme Court has held that an insurer has "an obligation to conduct a good faith investigation into the facts before it finally denies liability and refuses payment." *Brown v. Continental Cas. Co.,* 209 Kan. 632, 498 P.2d 26, Syl. ¶ 6 (1972). There is nothing in the record, however, to indicate that defendant refused to review any relevant materials in the Coast lawsuit. Although defendant may have engaged in dilatory conduct and ne-glected to provide plaintiffs with a prompt evaluation of their claim, plaintiffs concede that defendant had possession of virtually all relevant documents before denying plaintiffs coverage under the CGL Policy. (Pls.' Mot. for Summ. J. at ¶¶ 20–35). The court does not find that defendant's review of plaintiffs' claim was of sufficient bad faith to warrant an award of attorney's fees.

 Plaintiffs next contend that defendant had no bona fide reason for denying plaintiffs' claim. An insurer's denial of a policy claim is considered "bona fide" if the insurer's explanation "is not frivolous or patently without reasonable foundation." *Glickman v. Home Ins. Co.,* 86 F.3d 997 (10th Cir.1996) (citing *Clark Equip. Co. v. Hartford Accident & Indem. Co.,* 227 Kan. 489, 608 P.2d 903, 907 (1980)). Although the court ultimately rejected defendant's "intentional act" averment as well as its contention that Coast's breach of contract and tort counterclaims were inextricably intertwined, the court would not characterize those arguments as frivolous or devoid of any reasonable foundation. Defendant took legitimate positions in this lawsuit and, while its arguments did not carry the day, no statutory attorney's fee award is justified.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiffs' motion to dismiss (Doc. 7) defendant's counterclaim is denied.

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment (Doc. 23) is granted on both their "duty to defend" and "duty to indemnify" claims, but denied on their statutory attorney's fees claim.

IT IS FURTHER ORDERED that defendant's motion for summary judgment (Doc. 27) is denied on plaintiffs' "duty to defend" and "duty to indemnify" claims, but granted on plaintiffs' statutory attorney's fees claim.

IT IS FURTHER ORDERED that plaintiffs shall submit to the court on or before July 21, 1997, a cost breakdown reflecting the legal fees and expenses they incurred in defending against Coast's tortious interference with contract/business relations coun-

terclaim. Defendants shall respond to plaintiffs' supplemental briefing on or before August 4, 1997.

**IT IS SO ORDERED.**