## No. 46,930

SPRUILL MOTORS, INC., *Appellant*, v. UNIVERSAL UNDERWRITERS INSURANCE CO., *Appellee*.

(512 P. 2d 403)

Opinion filed July 14, 1973.

*Kenneth C. Havner*, of Larry L. Kopke Law Offices, of Great Bend, argued the cause, and *Larry L. Kopke*, of the same firm, was with him on the brief for the appellant.

*Glen Opie*, of Great Bend, argued the cause, and *Fred L. Conner*, also of Great Bend, was with him on the brief for the appellee.

*L. M. Cornish, Jr.*, and *Edward B. Soule*, of Glenn, Cornish and Leuenberger, of Topeka, were on the brief for the Kansas Association of Property and Casualty Insurance Companies, Inc., *amicus curiae*.

The opinion of the court was delivered by

OWSLEY, J.: This an action by Spruill Motors, Inc., to recover from its insurer, Universal Underwriters Insurance Company, the judgment entered and attorneys' fees incurred in defending a suit brought by a third party. Defendant insurance company refused to defend plaintiff insured because the petition alleged acts outside the coverage of plaintiff's liability insurance policy.

On November 15, 1968, Spruill was sued by Vernon Rounkles of Great Bend, Kansas, alleging personal injuries and property damage deliberately inflicted by Spruill's employees. The incident giving rise to Rounkles' allegations of intentional tort occurred at Spruill's garage on October 31, 1968. For some months prior to the incident, Rounkles and Spruill Motors had disagreed over a bill for work done on Rounkles' 1962 Mercury automobile. Rounkles claimed the work was not properly done and refused to pay. Spruill insisted upon payment and sued Rounkles for $651.16, the amount owed for repairs. After bringing the same automobile in for repairs following a subsequent accident, the automobile was sitting at Spruill's garage and Rounkles, thinking it was repaired and ready for him to pick up, drove it away. Spruill employees immediately retrieved the car from the driveway of Rounkles' home and took it back to Spruill's garage. Rounkles drove back to Spruill's garage in his pickup truck, parked it, and again drove his automobile to his home. While returning to get his truck, he saw Spruill employees towing it to their other business location one block away. Accounts of Rounkles and Spruill employees differ as to events which occurred thereafter. In his petition against Spruill, Rounkles alleged that ". . . on seeing his truck being towed by the defendant's pickup, [plaintiff] went to the pickup and started to open the door on the right hand side, and the employee of the defendant, upon seeing the plaintiff, intentionally, maliciously and with intent to do great bodily harm to the plaintiff, ran over plaintiff's right foot. . . ." Rounkles' petition does not make clear which truck ran over his foot.

One of Spruill's employees testified by deposition he was driving the Spruill truck and was towing Rounkles' truck, and Rounkles

did not come near enough to either truck to be hit or run over. The employee guiding Rounkles' truck testified by deposition Rounkles jumped onto the running board of his own truck and tried to get him to stop, but he could not stop since Rounkles' truck was being towed. Rounkles jumped down immediately, according to the testimony of the driver of Rounkles' truck, and he further testified he felt no bump or saw no reaction from Rounkles to indicate he had been run over or was hurt in any way. These same employees testified Rounkles gave no indication of being injured throughout the argument which continued for several hours at Spruill's garage. Rounkles insisted Spruill could not keep his truck and threatened to back it out through the closed garage doors. Police were called into the melee.

Rounkles' petition alleged intentional torts by Spruill and sought $25,000 damages for personal injury, pain and suffering, humiliation, loss of use of his automobile and truck, mental anguish, loss of profit, and punitive damages. Defendant Spruill denied the allegations of intentional tort, and its cross-appeal incorporated its pending suit against Rounkles for the $651.16 repair bill.

Universal Underwriters Insurance Company sent letters dated December 17 and 18, 1968, to Spruill Motors, Inc., and its attorney, reserving rights to deny coverage even though continuing to investigate the incident and defend Spruill. Insurer's attorneys officially withdrew from the defense of Spruill on September 4, 1969.

The Rounkles v. Spruill Motors Corporation case was tried without a jury on January 9, 1970, and resulted in judgment against Spruill for $2,500.00 and costs from which was deducted the cost of repairs to Rounkles' car. The judgment paid by Spruill amounted to $2,345.95.

Plaintiff filed the present action against Universal Underwriters Insurance Company on April 3, 1970, seeking $3,448.04 as reimbursement for the judgment and attorney fees in the Rounkles case and seeking costs and attorney fees incurred in the case at bar against its insurer.

Defendant herein, Universal Underwriters, answered denying it had any duty to pay attorney fees or judgment against its insured because Rounkles' petition alleged injuries due to insured's intentional torts. Universal Underwriters contends such intentional acts are outside the coverage of Spruill's liability insurance contract with the company for two reasons: (1) it is against public policy to insure anyone against the results of his intentional torts, and (2)

they are specifically excluded from the definition of "occurrences" against which Spruill is insured. The policy provides:

"The company will pay on behalf of insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies caused by an occurrence and arising out of garage operations, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damages, even if any of the allegations of the suit are groundless, false or fraudulent. . . ."

" 'Occurrence' means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

Defendant's motion for summary judgment was sustained. In its memorandum decision the court found there was no ambiguity in the clauses of the insurance policy setting forth the liability coverage and insurer's duty to defend, nor was there any issue as to the material facts of the case. The trial court based its decision on *Gowing v. Great Plains Mutual Ins. Co.*, 207 Kan. 78, 483 P. 2d 1072, which holds an ambiguous exclusionary clause in an insurance contract should be construed to favor the interpretation of the insured. The trial court, finding no ambiguity in Spruill's contract, construed the coverage and exclusionary clauses in the insurer's favor, denying recovery to plaintiff. Plaintiff appeals the court's order on both procedural and substantive grounds.

An insurer's duty to defend has been considered by this court on several occasions. In *El Dorado Refining Co. v. United States Fidelity & G. Co.*, 157 Kan. 198, 139 P. 2d 369, we stated the insurer is not bound to defend the insured in actions brought wholly outside any coverage obligations assumed in the policy or when the insurer would have no liability if plaintiff secured a judgment against the insured. We adhere to this rule and hold that where there is no coverage there is no duty to defend.

In *Leonard v. Maryland Casualty Co.*, 158 Kan. 263, 146 P. 2d 378, the insured brought an action against his carrier for attorney fees expended in successfully defending an action for wrongful death. The insured had refused to defend on the ground the petition alleged the deceased was acting in the scope of his employment with the insured at the time of his death, and the policy excluded any obligation for which the insured could be held liable under the Workmen's Compensation Law. The following rules emerged:

"The obligation of an insurer, under an automobile liability policy, to defend an action for damages against the insured, is to be determined when action is brought, and not by its outcome.

"The duty of an insurer under an automobile liability policy to defend an action for damages against its insured is not measured by proof which may be adduced at the trial or by outcome of the litigation, but by the allegations of the petition in the action and by the terms and provisions of the insurance contract." (Syl. ¶¶ 1 and 2.)

In *Milliken v. Fidelity and Casualty Company of New York*, 338 F. 2d 35 (10th Cir. 1964), an action which arose from Kansas, the court held, contrary to *Leonard*, that the insurer in determining its duty to defend could not rely on the allegations of the complaint. This case was decided before the new code of civil procedure was adopted in Kansas, and before procedural rules in Kansas were harmonized with the federal rules of procedure. The federal court pointed out that under Kansas practice facts must be pleaded to support a cause of action, contrary to federal rules of "notice pleading" which require only "a short and plain statement of the claim." The court noted that "notice pleading" is made possible by the liberal opportunity for discovery and other pretrial procedures to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. The court then stated:

"This court has consistently held that as a general rule the duty of an insurer to defend its insured in federal court litigation is determined in the beginning of the litigation by the coverage afforded by the policy, as compared with the allegations of the complaint filed in the action. But, the allegations of the complaint are not conclusive on the issue. The duty to defend may attach at some later stage of the litigation if the issues of the case are so changed or enlarged as to come within the policy coverage. The reason for this rule is that ' * * * [u]nder the Federal Rules of Civil Procedure the dimensions of a lawsuit are not determined by the pleadings because the pleadings are not a rigid and unchangeable blueprint of the rights of the parties. * * * ' Thus, the insurer's duty to defend an action brought in federal court against its insured may arise or attach at any stage in the litigation. And the duty does attach where there are facts, extraneous to the allegations of the pleadings, which, if proved, make out a case against the insurer that is covered by the policy and which either are actually brought to the insurer's attention or could have been discovered by it through a reasonable investigation." (p. 40.)

In *Brown v. Green*, 204 Kan. 802, 466 P. 2d 299, we again considered the effect of an exclusionary clause eliminating injuries covered by the Workmen's Compensation Act and held there was no duty to defend. We said:

"The duty of an insurer to defend an action for damages against its insured is not measured by proof which may be adduced at the trial or by the outcome of the litigation, but is to be determined by the allegations of the petition in the action and by the terms and provisions of the policy, and, where an insurer would have no liability in event a judgment is rendered against its insured, it is not obligated to defend the action. In other words, where there is no liability—there is no duty to defend." (Syl. ¶ 3.)

We did not consider the changes made by the new code of civil procedure in Kansas or the effect of the *Milliken* case in *Brown;* however, we must now face this issue. It is our judgment that case law must give way to statutory declarations. We must overrule *Leonard* and *Brown,* and any like decisions holding that an insurer may rely on the plaintiff's petition alone to determine whether there is a duty to defend. We adopt the rule in *Milliken* that an insurer must look beyond the effect of the pleadings and must consider any facts brought to its attention or any facts which it could reasonably discover in determining whether it has a duty to defend. If those facts give rise to a "potential of liability" under the policy, the insurer bears a duty to defend. (*Gray v. Zurich Insurance Co.,* 65 C. 2d 263, 54 Cal. Rptr. 104, 419 P. 2d 168.) In *Gowing v. Great Plains Mutual Ins. Co.,* supra, we held the company had a duty to defend based on ambiguity in the policy. As we view this difficult question we conclude the duty to defend rests primarily on the possibility that coverage exists. This possibility may be remote, but if it exists the company owes the insured a defense. The possibility of coverage must be determined by a good-faith analysis of all information known to the insured or all information reasonably ascertainable by inquiry and investigation. If ambiguities in coverage, including exclusionary clauses, are judicially determined against the insurer the ultimate result controls the insurer's duty to defend.

Public policy prohibits coverage for intentional and malicious acts. (*Gowing v. Great Plains Mutual Ins. Co.,* supra; *Walters v. American Ins. Co.,* 185 C. A. 2d 776, 8 Cal. Rptr. 665; *Malanga v. Manufacturers Cas. Ins. Co.,* 28 N. J. 220, 225, 146 A. 2d 105.) Turning to the facts in this case we find the complaint in the original action alleged intentional acts. As stated in *Milliken,* the insurer can no longer rely exclusively on the allegations of the complaint to determine its duty to defend. If knowledge reasonably ascertainable reveals the acts charged may not have been

intentional, coverage may exist and the corollary duty to defend arises.

The insurer provided a defense for its insured, Spruill, under a reservation of rights. The reservation of rights letter stated its purpose was to permit the insurer to make an impartial and full investigation of all matters relating to the claim. The investigation report is shown in the record. Two employees of Spruill deny any intentional acts resulting in injuries to Rounkles. The report also contains the following statement by insurer's investigator:

"We actually question whether anyone would hold that the injury itself was deliberate. True, taking possession of Rounkles' truck was intentional, but [we] would be hard-pressed to prove that if Rounkles did sustain an injury, this too, was intentional."

The report was comprehensive and nothing contained therein discloses any intentional acts by Spruill resulted in personal injury to Rounkles. The report was in the hands of the insurer at the time of its withdrawal of defense of Spruill. It is obvious the insurer had information in its hands at that time which blatantly showed a probability that the policy issued to Spruill covered the personal injuries to Rounkles.

Defendants argue the act of Spruill's employees in taking possession of Rounkles' truck was wrongful and intentional and therefore Spruill was not covered. As we view the facts, the act of taking possession of the truck, although intentional, was not the act which caused Rounkles' personal injury. If liability for personal injury attached it was caused by the manner in which the employees were moving the truck.

The policy provided that the injury must be caused by an "occurrence" which is defined as "an accident . . . which results . . . in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The insurer's investigation report disclosed the insured neither expected nor intended bodily injury to result. Under this policy, coverage is avoided only when an act results in an intentional injury. An intentional act may result in an unintended injury. As we pointed out in *Gowing*, at page 82, ". . . the distinction between an intentional injury and an unintended injury resulting from an intentional act has been recognized by various authorities." Since the undisputed facts disclose the personal injury to Rounkles was not the intended result of Spruill's acts, the policy of insurance covered Spruill for Rounkles' personal injury.

Insurance contracts, by the use of independent and unrelated language, attempt to define the duty to defend. We will not speculate on the reasons, but the policies uniformly do not define the duty to defend as being parallel to the coverage of the policy. The result may be to extend the duty to defend beyond the extent of the coverage. This issue need not be considered in this action since we have concluded coverage exists. Failure to recognize this possibility might result in misconception of our holding in this action.

Plaintiff complains the trial court's action in sustaining summary judgment against it was premature since discovery had not been completed and there were genuine issues of material fact. We have carefully examined the record and find there were no genuine issues of material fact relative to the question of coverage. We have concluded the undisputed facts disclosed in the record were sufficient to place the case in the posture for granting of summary judgment on the principal issue involved. We hold the trial court erred in sustaining the defendant's motion for summary judgment. As a matter of law, judgment should be entered in favor of the plaintiff, subject to the further proceedings hereinafter directed. Defendant is indebted to plaintiff for such portion of the judgment rendered in the Rounkles action assignable to personal injury. Since the judgment in the Rounkles action does not disclose the portion assignable to personal injury, the case must be returned to the trial court for an evidentiary hearing to determine this issue. A determination of this issue by the trial court will fix the liability of the defendant as to the judgment rendered in favor of Rounkles.

Plaintiff also seeks recovery for attorney fees expended by him in the Rounkles action in the sum of $948.04 and seeks recovery of attorney fees expended in preparation and trial of this action in the trial court, as well as attorney fees in bringing the case to this court for review.

We are of the opinion that the claim for attorney fees in the Rounkles action should be allowed and the trial court should determine the amount based on the standard of reasonableness which exists in the community. The duty to defend this action was dependent on the issue of coverage. Since we have determined there was coverage, the right to a defense was one of the benefits provided in the insurance contract.

In considering the issue of attorney fees in this action, both in the trial court and on appeal, we have a different situation. In

this action the provisions of K. S. A. 40-256 (now K. S. A. 1972 Supp. 40-256) must be applied. The statute provides if it appears the insurance company ". . . has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee. . . ." We have said "without just cause and excuse" depends upon the facts and circumstances of each particular case and means a frivolous and unfounded denial of liability. We have also stated a proof of loss showing on its face the insured had no coverage under an insurance policy affords reasonable ground for the insurer to justify declining liability. (*Koch, Administratrix v. Prudential Ins. Co.*, 205 Kan. 561, 470 P. 2d 756.) At the time defendant refused to defend, and denied liability, the law of this state was as stated in *Leonard v. Maryland Casualty Co.*, supra, and *Brown v. Green*, supra. These cases stood for the proposition that the duty to defend is to be determined when the action is brought and the insurer is entitled to rely on the allegations of the petition to determine if there is liability. An examination of the Rounkles petition discloses the cause of action was based on intentional, malicious, wanton, and reckless acts. In view of the provisions of the policy excepting coverage for intentional injury, we must conclude the insurer had "just cause and excuse" to deny liability and refuse to defend. Although we have seen fit to depart from this rule, we must judge the action of the insurer in the light of the law existing at the time the insurer was required to act. The request for attorney fees in this action is denied.

Reversed and remanded with directions.