**ERA FRANCHISE SYSTEMS, INCORPORATED, successor in interest to Electronic Realty Associates, L.P. and Electronic Realty Associates, Incorporated, plaintiff,**

v.

**NORTHERN INSURANCE COMPANY OF NEW YORK, defendant.**

No. Civ.A. 97–2592–GTV.

United States District Court, D. Kansas.

Dec. 15, 1998.

Lynn W. Hursh, Casey O. Housley, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO, for plaintiff.

Michael A. Childs, Jerry W. Brumfield, Brown & James, P.C., Kansas City, MO, for defendant.

### MEMORANDUM AND ORDER

VANBEBBER, District Judge.

Plaintiff ERA Franchise Systems, Incorporated brings this declaratory judgment action alleging that defendant Northern Insurance Company of New York breached its insurance contract by refusing to defend and indemnify plaintiff in two state court lawsuits in Santa Cruz County, California. The court has diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332(a) and (c). Plaintiff is a corporation organized and existing under the laws of Delaware, and having its principal place of business in Kansas. Defendant is a company organized and existing under the

laws of New York, and having its principal place of business in a state other than Delaware or Kansas. Venue is proper pursuant to 28 U.S.C. § 1391(a) and (c).

The case is before the court on the following motions:

(1) Plaintiff's motion for summary judgment (Doc. 20);

(2) Defendant's motion for summary judgment (Doc. 23);

(3) Defendant's motion to strike section II of plaintiff's memorandum in opposition to defendant's motion for summary judgment (Doc. 28).

For the reasons set forth below, plaintiff's motion for summary judgment is denied, defendant's motion for summary judgment is granted, and defendant's motion to strike is denied.

## I. SUMMARY JUDGMENT STANDARDS

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *See Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Ca-*

*trett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See id.*

Both plaintiff and defendant have filed motions for summary judgment on plaintiff's claims. The court will address the motions together. The legal standard does not change if the parties file cross-motions for summary judgment. Each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Houghton v. Foremost Fin. Servs. Corp.,* 724 F.2d 112, 114 (10th Cir.1983); *United Wats, Inc. v. Cincinnati Ins. Co.,* 971 F.Supp. 1375, 1382 (D.Kan.1997). Although the court will not automatically decide the case at the summary judgment stage merely because the parties have filed cross-motions for summary judgment, summary judgment is appropriate if there are no genuine issues of material fact. *See id.*

## II. FACTUAL BACKGROUND

The following facts are either uncontroverted or are based on evidence submitted with summary judgment papers viewed in the light most favorable to plaintiff.[1] Immaterial facts and facts not properly supported by the record are omitted.

Plaintiff ERA Franchise Systems, Inc.—a successor interest to Electronic Realty Associates, Inc.—franchises a service system to

---

1. The court disagrees with defendant's motion to strike contention that plaintiff's additional uncontroverted facts submitted in its memorandum in opposition to defendant's motion for summary judgment are improper. The court does not find that the absence of express permission for additional uncontroverted facts in the Local Court Rules or the Federal Rules of Civil Procedure necessarily implies that such facts are not permitted. In fact, Fed.R.Civ.P. 56(e) seems to re-

quire or at least permit it: "an adverse party may not rest upon the mere allegations or denials ... but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Parties routinely submit additional uncontroverted facts in memorandums in opposition to motions for summary judgment, and the court routinely considers them when properly supported.

independently owned and operated real estate brokerage companies to use certain service concepts, service marks, and trademarks. Defendant Northern Insurance Company of New York issued a Commercial Insurance Policy to plaintiff for the coverage period of July 22, 1993 to January 1, 1994. This policy included a Commercial General Liability (CGL) coverage section.

On July 10, 1995, Claude Bernasconi and thirteen other plaintiffs filed a lawsuit against Arnoldo Gil–Osorio, the Real Estate Center of Santa Cruz, Electronic Realty Associates, Inc. (ERA), William Bryant, and Ralph Bargetto in Santa Cruz County, California. Gil–Osorio was a real estate agent for the Real Estate Center of Santa Cruz. The Real Estate Center of Santa Cruz was a franchisee of ERA. Bryant and Bargetto were employees of the Real Estate Center of Santa Cruz.

The Bernasconi suit alleged that Gil–Osorio had provided the plaintiffs with inappropriate and inaccurate investment and real estate advice, causing the plaintiffs to lose substantial sums of money invested with him, including interest. The Bernasconi complaint alleged that the defendants had committed acts or omissions amounting to professional negligence, general negligence, breach of fiduciary duty, constructive fraud, negligent misrepresentation, negligence as to franchisor, negligent training or supervision, statutory violations, agency, and negligent infliction of emotional distress. In connection with their lost investments, the Bernasconi plaintiffs alleged loss of use of the enjoyment of property, and loss of sleep as a result of their emotional distress.

In September 1995, ERA tendered the Bernasconi lawsuit to Northern Insurance, and requested a defense for the lawsuit under the CGL policy. On October 25, 1995, Northern Insurance casualty adjuster John Hutchinson sent a letter to ERA disclaiming any duty to defend or indemnify ERA.

On February 16, 1996, Judith McCarrick and seven other plaintiffs filed a lawsuit against the same defendants that were sued in the Bernasconi lawsuit. The McCarrick lawsuit was virtually identical to the Bernasconi lawsuit, alleging the same claims, injuries, and losses. ERA never tendered the McCarrick lawsuit to Northern Insurance, and never requested a defense for the McCarrick lawsuit under the CGL policy. The Bernasconi and McCarrick lawsuits were consolidated for discovery and trial.

### III. Discussion

Plaintiff ERA alleges that defendant Northern Insurance breached the CGL policy by refusing to defend and indemnify plaintiff in the consolidated Bernasconi and McCarrick lawsuit. Plaintiff also contends that defendant's denial of the policy claim violated K.S.A. § 40–256, thereby entitling plaintiff to attorney's fees incurred in this action. Defendant insists that it denied plaintiff's policy claim because the underlying plaintiffs did not claim "bodily injury" or "property damage" as defined by the CGL policy. Alternatively, defendant argues that even if the underlying plaintiffs' claims involved "bodily injury" or "property damage," defendant properly denied policy coverage because the claims are excluded under the CGL policy endorsement.

### A. Notice of McCarrick Lawsuit

Defendant first argues that plaintiff is not entitled to coverage under the CGL policy for the McCarrick lawsuit because it never provided defendant with the requisite notice as required by the CGL policy. Defendant first learned of the McCarrick lawsuit when plaintiff filed the instant declaratory judgment action. Plaintiff argues that defendant had notice because the McCarrick lawsuit was virtually identical to the Bernasconi lawsuit, of which defendant had notice, and because the Bernasconi and McCarrick lawsuits were consolidated for discovery and trial.

Because the court's ruling is unaffected by defendant's notice, or lack thereof, the court finds it unnecessary to determine whether defendant had notice of the McCarrick lawsuit, or if the lack of such notice substantially prejudiced defendant. *See Hunt v. Kling Motor Co.,* 841 F.Supp. 1098, 1101 (D.Kan. 1993) (noting that Kansas requires an insurer to demonstrate substantial prejudice from lack of notice before it may be relieved of liability). The court will assume for purposes of this motion that defendant had notice of the McCarrick lawsuit in evaluating

whether defendant had a duty to defend plaintiff in the underlying consolidated Bernasconi and McCarrick lawsuit.

## B. Duty to Defend

■ Under Kansas law,[2] an insurer has a duty to both defend and indemnify an insured. Because the duty to defend is broader than the duty to indemnify, "an insurer may incur a duty to defend its insured even though it ultimately may not have an obligation to indemnify any liability that may be found against the insured." *American Motorists Ins. v. General Host Corp.*, 946 F.2d 1489, 1490 (10th Cir.1991). Insurers must defend lawsuits initiated against their insured "whenever there is a 'potential of liability' under the policy." *Bankwest v. Fidelity & Deposit Co.*, 63 F.3d 974, 978 (10th Cir.1995) (citing *State Farm Fire & Cas. Co. v. Finney*, 244 Kan. 545, 770 P.2d 460, 466 (1989)). The assessment of whether such a liability potential exists must be predicated on both the allegations in the underlying complaint as well as any additional facts that have been brought to the insurer's attention or that the insurer could have reasonably discovered.[3] *See Bankwest*, 63 F.3d at 978. "So long as the insured can show a non-frivolous possibility that the claim against it may fall within the coverage of the insurance contract, the insurer has a duty to defend the insured." *American Motorists*, 946 F.2d at 1490. "The possibility of coverage may be remote, but if it exists the [insurance] company owes the insured a defense." *Id.* (alteration in original) (citing *Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. 707, 732 P.2d 741, 744 (Kan.1987)); *see also United Wats*, 971 F.Supp. at 1382. An insurer is not, however, required to defend if the action brought is "wholly outside any coverage obligations assumed in the policy or when the insurer would have no liability if plaintiff secured a judgment against the insured." *Spruill Mo-*

tors, Inc. v. Universal Underwriters Ins. Co., 212 Kan. 681, 684, 512 P.2d 403 (1973).

### 1. Occurrence

■ As the insured, plaintiff has the burden of proving that its loss, arising from the underlying lawsuit, falls within the CGL policy coverage. *See City of Salina v. Maryland Cas. Co.*, 856 F.Supp. 1467, 1474 (D.Kan. 1994). The CGL policy covers "bodily injury" or "property damage" caused by an "occurrence." "Occurrence" is defined by the policy as "an accident, including continuous or repeated exposure to substantially the same general, harmful condition."

Plaintiff first alleges that the recent Kansas Supreme Court case of *Brumley v. Lee*, 265 Kan. 810, 963 P.2d 1224 (1998), mandates a finding that the CGL policy definition of "occurrence" is ambiguous, therefore requiring the policy to be construed to provide coverage for plaintiff. The court disagrees. In *Brumley*, the court evaluated coverage of an insured for negligently contributing to his co-insured wife's murder of a child. The court found the term "occurrence" ambiguous because the homeowners' policy did not define the term "accident," and did not specify from whose standpoint the accident determination is to be made when more than one insured is involved. *Brumley*, 265 Kan. at 824–25, 963 P.2d 1224.

■ While *Brumley* is similar to the instant case because neither policy defines "accident," as used in the "occurrence" definition, the similarity ends there. The instant case does not involve the coverage of co-insureds, and the ambiguity that arises when the policy does not specify from whose standpoint the accident determination is to be made when more than one insured is involved. Additionally, *Brumley* noted that "[t]he absence of any definition of the term

2. The court will apply Kansas law in this diversity case because the policy in question was issued in Kansas. *See Simms v. Metropolitan Life Ins. Co.*, 9 Kan.App.2d 640, 642, 685 P.2d 321 (1984) (Kansas courts apply the law of the place where the contract was made when the question involves interpretation of a contract).

3. The parties dispute the thoroughness of defendant's investigation of the liability potential be-

cause defendant's casualty adjuster John Hutchinson did not review the underlying plaintiffs' interrogatories prior to denying the claim. Defendant contends that it did not review the interrogatories because plaintiff failed to provide defendant with them. The court finds it unnecessary to determine the sufficiency of Hutchinson's investigation because even considering the interrogatories, the underlying lawsuit does not fall within the CGL policy's coverage.

'accident' in the policy merely means that an interpretation by law shall apply rather than an interpretation by contractual language." *Brumley*, 265 Kan. at 822, 963 P.2d 1224 (quoting 13 Appleman, *Insurance Law & Practice* § 7486, at 632 (1976)). "And where it is not defined in the policy, it must be interpreted in its usual, ordinary, and popular sense." *Id.* The court finds that the term "occurrence" in the CGL policy is not ambiguous in light of the usual, ordinary, and popular meaning of "accident."

▮ Plaintiff next alleges that Gil–Osorio's financial advice, which allegedly caused the underlying plaintiffs' loss of investments, amounts to an "occurrence" under the policy. Plaintiff contends that although Gil–Osorio intentionally held himself out as a financial advisor, his actions were never sanctioned or condoned by plaintiff. Therefore, from plaintiff's standpoint, the underlying plaintiffs' damages were an accident, amounting to an "occurrence."

Kansas courts recognize that an intentional act may result in an unintended injury. *See Spruill Motors*, 212 Kan. at 687, 512 P.2d 403. "The fact that an accident is caused by or is traceable to the act of a person other than the insured does not prevent the occurrence from being an 'accident.'" *Brumley*, 265 Kan. at 823, 963 P.2d 1224 (citing 10 *Couch on Insurance 2d* § 41:14 (1982)). "When the injury is not the result of the misconduct or the participation of the in[s]ured party, it is, as to him, accidental although inflicted intentionally by the other party." *Id.* (alteration in original). The court does not believe, however, that these general principles mandate an accident classification simply because plaintiff did not intend or desire to have Gil–Osorio's financial advice cause injury. Because the underlying lawsuit invokes principles of agency and negligent supervision on the part of plaintiff, the court is unwilling to deem Gil–Osorio's financial advice an "accident" from plaintiff's standpoint. The court, therefore, concludes that the underlying plaintiffs' claims did not stem from an "occurrence" as required for CGL policy coverage.

### 2. Bodily Injury

Even if Gil–Osorio's financial advice amounted to an "occurrence," defendant did not have a duty to defend the underlying suit because this "occurrence" did not cause "bodily injury." "Bodily injury" under the CGL policy "means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

▮ Plaintiff again contends that the term "bodily injury" is ambiguous, and must therefore be construed in favor of the insured. Plaintiff urges the court to find "bodily injury" ambiguous because the CGL policy includes the term "bodily injury" in the "bodily injury" definition. The court, however, finds this, without more, insufficient to make the term ambiguous. "It [is] not a function of the trial court to create an ambiguity requiring an interpretation favorable to the insured when no ambiguity exists." *City of Salina*, 856 F.Supp. at 1475 (alteration in original) (quoting *Miner v. Farm Bureau Mut. Ins. Co.*, 17 Kan.App.2d 598, 841 P.2d 1093 (1992)). In fact, this court has previously found "bodily injury" to be unambiguous in the context of emotional injuries. *Lapeka v. Security Nat'l Ins. Co., Inc.* 814 F.Supp. 1540, 1548–49 (D.Kan.1993).

▮ Plaintiff next contends that because the interrogatory answers indicated physical manifestations of emotional distress—that is, some of the underlying plaintiffs suffered from loss of sleep—the underlying plaintiffs' emotional distress amounts to "bodily injury," triggering defendant's duty to defend under the CGL policy. *See id.* (citing with approval *University of Illinois v. Continental Cas.*, 234 Ill.App.3d 340, 175 Ill.Dec. 324, 599 N.E.2d 1338, 1353 (Ill.App.1992) ("bodily injury" restricted to mean "actual physical injury" as opposed to broadening it to include mental anguish and mental disease); *National Ben Franklin Ins. Co. v. Harris*, 161 Mich.App. 86, 409 N.W.2d 733, 735 (Mich. App.1987) ("bodily injury" does not include humiliation, mental anguish, and mental suffering; at a minimum, it would require physical manifestation of mental suffering to satisfy the bodily injury requirement)). Plaintiff, however, has failed to recognize that insomnia is insufficient to qualify as the requisite physical manifestation of an emotional distress claim. *See Reynolds v. Highland Manor, Inc.*, 24 Kan.App.2d 859, 861–62, 954 P.2d

11 (1998) (citing *Hopkins v. State*, 237 Kan. 601, 612–13, 702 P.2d 311 (1985)).

Based on the facts brought to defendant's attention, and the facts defendant could have reasonably discovered, there were no physical manifestations of the underlying plaintiffs' claim. The type of injuries alleged by the underlying plaintiffs simply did not fall within the definition of "bodily injury" coverage of the CGL policy. *See Lapeka*, 814 F.Supp. at 1549. The court therefore concludes that plaintiff has failed to meet its burden to prove that the injury alleged in the underlying lawsuit amounts to "bodily injury" as defined by the CGL policy.

### 3. Property Damage

■ Moreover, even if Gil–Osorio's financial advice amounted to an "occurrence," defendant did not have a duty to defend the underlying suit because this "occurrence" did not cause "property damage." Under the CGL policy, "property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

Plaintiff alleges that the underlying plaintiffs' loss of use of property amounts to "property damage" under the CGL policy.[4] Plaintiff, however, has failed to identify the loss of use of any *tangible* property. The underlying plaintiffs' loss of use allegations are in relation to their lost investments. Although plaintiff attempts to characterize the underlying claims differently, the clear basis of the underlying complaint is that they invested money with Gil–Osorio and that they lost money on those investments. This court has held that "liability insurance policies covering property damage [do] not insure against losses resulting in only economic

damages since there [is] no damage to tangible property." *Safeco Ins. Co. of America v. Tozier*, No. 93–2453, 1994 WL 476304, at *4 (D.Kan. August 4, 1994). "[A]n economic loss of investment does not constitute loss of tangible property." *Bendis v. Hartford Accident & Indem., Co.*, Nos. 90–2198, 91–2192, 1993 WL 463617, at *2 (D.Kan. September 16, 1993).

The court finds the instant case similar to the factual situation in *American States Insurance Co. v. Martin*, 662 So.2d 245 (Ala. 1995). In *American States*, the defendant deprived the underlying plaintiffs of their initial investment, profits, and other benefits, after they had made substantial payments to the defendant for real estate investments. *Id.* at 249. "[T]he clear basis of [the] complaint is that they invested money with Martin and that they lost money on those investments." *Id.* The court held that "strictly economic losses like lost profits, loss of an anticipated benefit of a bargain, and loss of an investment, do not constitute damage or injury to 'tangible' property." *Id.* This court agrees with the sound reasoning in *American States* and concludes that the strictly economic losses sustained by the underlying plaintiffs in the instant case do not constitute damage or injury to tangible property. The court finds that plaintiff has failed to meet its burden to prove that the facts alleged in the underlying lawsuit amount to "property damage" as defined by the CGL policy.

### 4. Policy Endorsement

■ Defendant contends that the CGL policy endorsement number CG 2134 provides the court with an alternative basis to determine that the underlying plaintiffs' claims are wholly outside the CGL policy coverage. Defendant, as the insurer, bears the burden of proving the applicability of the exclusionary clause. *See City of Salina*, 856 F.Supp. at 1475. The policy endorsement provides the following:

4. Plaintiff also alleges that several underlying plaintiffs claimed that they were induced or forced to sell their real estate as a result of Gil–Osorio's actions. The record, however, does not indicate that the underlying plaintiffs actually claimed this. Claude Bernasconi's interrogatory stated that "Gil–Osorio advised me to purchase a

home at Hillcrest Terrace. In order to purchase Hillcrest Terrace, I needed to sell Germaine Avenue, as I could not pay for two mortgages." The court, however, finds this deficient to support plaintiff's contention that the underlying plaintiffs claimed that they were induced to sell real estate.

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

"Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work". . . .

"Your work" means: Work or operations performed by you or on your behalf. . . .

The Schedule describes plaintiff's work as "real estate agents."

Defendant argues that because the underlying complaint alleged that plaintiff failed to adequately supervise Gil–Osorio—a real estate agent—the damages arose out of the "work" or operations of plaintiff performed "by you or on your behalf." Plaintiff contends that the underlying lawsuit falls outside the policy endorsement because Gil–Osorio acting in his financial consulting capacity—not his real estate capacity—caused the underlying plaintiffs' loss.

The court, however, is unpersuaded by plaintiff's capacity distinction. Gil–Osorio was doing business as a financial consultant within the Real Estate Center of Santa Cruz office bearing ERA signage, he distributed business cards with the ERA name identifying him as a Realtor–Associate and Financial Consultant, and he indicated to the underlying plaintiffs that he had the full support and authority of ERA. Because Gil–Osorio was working as a real estate agent and the underlying plaintiffs' loss occurred away from plaintiff's premises, the policy endorsement excludes coverage of the underlying lawsuit.

Based on the foregoing reasons, the court concludes that the underlying lawsuit claims are wholly outside any coverage assumed in the CGL policy, and therefore, defendant had no duty to defend plaintiff. *See Spruill Motors*, 212 Kan. at 684, 512 P.2d 403. Because the court concludes that defendant did not breach its duty to defend—which is broader than the duty to indemnify an insured—the court also finds that defendant did not breach its duty to indemnify plaintiff in the underlying lawsuit. *See American Motorists*, 946 F.2d at 1490.

## C. Attorney's Fees

Plaintiff argues that, pursuant to K.S.A. § 40–256, it is entitled to recover attorney's fees incurred in prosecuting this action. K.S.A. § 40–256 provides in pertinent part:

**Attorney fees in actions on insurance policies; exception.** That in all actions hereafter commenced, in which judgment is rendered against any insurance company . . . if it appears from the evidence that such company . . . has refused without just cause or excuse to pay the full amount of loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action . . . to be recovered and collected as a part of the costs.

The court finds an attorney's fees award inappropriate in the instant action because the court has not rendered judgment against defendant. "If an insurance company's refusal is a frivolous and unfounded denial of liability that is patently without any reasonable foundation, it is 'without just cause or excuse.'" *City of Salina*, 856 F.Supp. at 1481 (citing *Clark Equip. Co. v. Hartford Accident & Indem.*, 227 Kan. 489, 608 P.2d 903 (1980)). Defendant did not refuse "without just cause or excuse" to defend plaintiff in the underlying lawsuit. Defendant clearly had a bona fide and reasonable factual ground for refusing to defend plaintiff. *See City of Salina*, 856 F.Supp. at 1481 (citing *Allied Mut. Ins. Co. v. Gordon*, 248 Kan. 715, 811 P.2d 1112 (1991)). Indeed, the underlying lawsuit claims fall wholly outside the CGL policy coverage.

IT IS, THEREFORE, ORDERED that plaintiff ERA Franchise Systems, Inc.'s motion for summary judgment (Doc. 20) is denied.

IT IS FURTHERED ORDERED that defendant Northern Insurance Company of New York's motion for summary judgment (Doc. 23) is granted.

IT IS FURTHER ORDERED that defendant Northern Insurance Company of New York's motion to strike (Doc. 28) is denied.

The case is closed.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED**