**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 26 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

NEW HAMPSHIRE INSURANCE
COMPANY,

      Plaintiff-Appellee,

v.

WESTLAKE HARDWARE, INC.,

      Defendant-Appellant.

No. 98-3203
(D. Kan.)
(D.Ct. No. 97-CV-2573-KHV)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BRORBY** and **LUCERO**, Circuit Judges, and **WEST**, District Judge.[**]

_____

New Hampshire Insurance Company (New Hampshire) sought a declaratory

judgment that Westlake Hardware, Inc. (Westlake), the insured, lacked indemnity

and defense coverage under the employee benefits liability endorsement

(endorsement) of a comprehensive general liability policy.  New Hampshire filed

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Lee R. West, United States District Judge for the Western District of Oklahoma, sitting by designation.

its action after Westlake sought to recover the costs of defending and settling a lawsuit initiated by its former chief financial officer. The district court granted New Hampshire's summary judgment motion, and Westlake now appeals. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.[1]

BACKGROUND

New Hampshire issued Westlake a comprehensive general liability policy containing the endorsement at issue in this case. In the endorsement, New Hampshire agreed to indemnify Westlake for all damages it became legally obligated to pay based on any claim by a former employee for injury caused by "any negligent act, error or omission of [Westlake] ... in the administration of [Westlake's] Employee Benefits as defined herein." Employee stock plans are included under the endorsement's definition of "employee benefits," and "administration" includes:

(a)   Giving counsel to employees including their dependents and beneficiaries, with respect to the Employee Benefits;

(b)   Interpreting Employee Benefits;

(c)   Handling records in connection with Employee Benefits;

(d)   Effecting enrollment, termination or cancellation of employees

---

[1] We grant Westlake Hardware Inc.'s motion to supplement the record.

under Employee Benefit Programs

In December 1996, Richard Masinton notified Westlake he was resigning his position as chief financial officer. A dispute ensued over the correct amount Westlake owed Mr. Masinton for 20,329 shares of Westlake common stock he purchased through an unfunded employee benefit plan (stock plan). The stock plan required Mr. Masinton to sell his stock back to Westlake on termination of his employment. The value the company would pay for the stock depended upon whether the termination was at the employee's election (in which case Westlake would pay the lesser of book value or appraisal value), or whether the relationship ended by normal retirement, death, disability or at Westlake's election (in which case Westlake would pay the greater of book or appraisal value). At this point, Mr. Masinton and Westlake disagreed on the circumstances surrounding the termination of their relationship. Westlake claimed Mr. Masinton left voluntarily, and should receive the lower value for his shares. Mr. Masinton claimed conditions at the company forced him to leave, leading to a constructive discharge and therefore entitlement to the greater value for his shares.

In order to effectuate an involuntary redemption of Mr. Masinton's shares, and because Westlake's independent auditors would be unable to determine the book value of the shares for some time, Westlake transferred $450,000 to an

irrevocable trust to cover what the company determined was the approximate value of the shares.[2] After an investigation of Mr. Masinton's tenure at the company, Westlake determined the amount owed Mr. Masinton was subject to forfeiture due to his alleged acts of malfeasance, breach of fiduciary duty and negligence while serving as Westlake's chief financial officer. On April 29, 1997, Mr. Masinton tendered his stock certificates to Westlake in its capacity as trustee of the irrevocable trust, and asked to be paid the fair book value of the stock, plus interest, from the trust. Upon advice of counsel, Westlake refused to distribute the trust funds, citing the ongoing investigation into Mr. Masinton's alleged malfeasance. In late May 1997, Mr. Masinton filed suit in state court, alleging Westlake breached its fiduciary duties as trustee of the irrevocable trust.[3]

---

[2] The trust was created "for the sole purpose of paying [Mr.] Masinton the Purchase Price for the Subject Shares pursuant to the [stock plan], said amount to be paid to Masinton including interest accrued ... at such time as [Mr.] Masinton surrenders the certificates for the Subject Shares to [Westlake]." Under the terms of the trust, Mr. Masinton was "entitled to collect the estimated Purchase Price of $390,520.00 at any time upon surrender of" his shares prior to the final purchase price determination.

[3] In his First Amended Petition filed in the underlying lawsuit, Mr. Masinton specifically alleged Westlake breached its fiduciary duties by: "actively concealing and failing to inform [Mr.] Masinton of the existence of the Irrevocable Trust, threatening to sue [Mr.] Masinton for exercising his rights under the Stock Agreements, willfully concealing and withholding the independent accountant's report on determination of value, and failing and refusing to distribute the purchase price of [Mr.] Masinton's shares, plus accrued interest, to [Mr.] Masinton in accordance with the Irrevocable Trust." The Petition went on to state: "Westlake's conduct in refusing to pay [Mr.] Masinton the purchase price of his shares and accrued interest, as required by the Irrevocable Trust, was intentional, willful, wanton and in reckless disregard for [Mr.] Masinton's rights."

-4-

(Apt. App. at 89-125, 199; Apt. Br. at 12; Ape. Br. at 8.) In August 1997, Mr. Masinton and Westlake settled their dispute for $423,574. (Apt. App. at 348-49.) This is the underlying suit and settlement for which Westlake now seeks indemnification and defense costs.

## DISCUSSION

We review a district court's grant of summary judgment de novo, applying the same legal standard employed by the district court. *Bankwest v. Fidelity & Deposit Co.*, 63 F.3d 974, 978 (10th Cir. 1995). Summary judgment is appropriate "if there are no genuinely disputed material facts and the moving party is entitled to judgment as a matter of law." *Burgess v. Farmers New World Life Ins. Co.*, 12 F.3d 992, 993 (10th Cir. 1993) (citing Fed. R. Civ. P. 56(c)). We must view the evidence in the light most favorable to the nonmoving party. *Bankwest*, 63 F.3d at 978. A federal court sitting in diversity applies the law of the forum state, in this case Kansas, and we review the district court's application of state law de novo. *See Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994). "If a federal court cannot ascertain the law of the forum state, we must in essence sit as a state court and predict how the highest state court would rule." *Id.*

Under Kansas law, an insurer's duty to defend arises when "facts give rise to a 'potential of liability' under the policy." *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 512 P.2d 403, 407 (Kan. 1973). "[A]n insurer must look beyond the effect of the pleadings and must consider any facts brought to its attention or any facts which it could reasonably discover in determining whether it has a duty to defend." *Id.* Thus, the relevant inquiry for the insurer is whether there is any possibility a duty to indemnify may arise from the facts of the case. *Bankwest*, 63 F.3d at 978 (citing *American Fidelity Ins. Co. v. Employers Mut. Cas. Co.*, 593 P.2d 14, 19-20 (Kan. Ct. App. 1979)). However, "the insurer is not bound to defend the insured in actions brought wholly outside any coverage obligations assumed in the policy or when the insurer would have no liability if plaintiff secured a judgment against the insured." *Spruill Motors*, 512 P.2d at 406.

The duty to defend is broader than the duty to indemnify. *See Bankwest*, 63 F.3d at 978. While the duty to defend is based on the allegations in the pleadings and other facts either known or reasonably discoverable to the insurer, the duty to indemnify is determined by the ultimate facts of the case as they are established at trial, summary judgment, or settlement. *Id.* In other words, the duty to defend arises at the time the complaint is filed, while the duty to indemnify is measured

after a trial is completed or a settlement reached. *See American Motorists Inc. v. General Host Corp.*, 946 F.2d 1489, 1490-91 (10th Cir. 1991).

The district court found New Hampshire had no duty to indemnify Westlake for the Masinton settlement because Westlake's refusal to release the trust funds set aside for the purchase of Mr. Masinton's stock constituted an intentional act, not covered under the "negligent act, error or omission" language of the endorsement. Similarly, the district court found New Hampshire had no duty to defend Westlake because the Masinton suit was "'wholly outside any coverage obligations assumed in the policy [and] the insurer would have no liability if plaintiff secured a judgment against the insured.'" *See New Hampshire Ins. Co. v. Westlake Hardware, Inc.*, 11 F. Supp. 1298, 1302 (D. Kan. 1998) (quoting *Spruill Motors*, 512 P.2d at 406). For substantially the same reasons articulated by the district court, we agree.

## A. Indemnification

Westlake first assigns error to the district court's interpretation of the "negligent act, error or omission" language of the policy, arguing "negligent"

modifies "act," but not "error or omission."[4]  Under Westlake's reading of the policy, any error or omission committed while interpreting employee benefits would constitute an insured loss.  We believe this interpretation defies basic grammatical principles.

If New Hampshire and Westlake intended the policy to cover every error, they could have easily accomplished that goal by agreeing to a policy covering any "error, omission, or negligent act," or damages resulting from an "error, negligent omission or negligent act of the insured," as the parties did in *Continental Cas. Co. v. Cole*, 809 F.2d 891, 895 (D.C. Cir. 1987).  In addition, "[i]t would be self-defeating to limit the definition of [the phrase] to negligent acts, but at the same time cover intentional errors or omissions." *Golf Course Superintendents Ass'n of America v. Underwriters at Lloyd's, London*, 761 F. Supp. 1485, 1490 (D. Kan. 1991).  The majority of courts hold the word "negligent" must modify the entire phrase.  We agree and conclude the endorsement at issue here covers only negligent acts, negligent errors, and negligent omissions.  *See Baylor Heating & Air Conditioning, Inc. v. Federated*

_____

[4]  In support of its argument, Westlake relies on nonbinding and nonpersuasive authority.  *See Continental Cas. Co. v. Reed*, 306 F. Supp. 1072 (D. Minn. 1969); *USM Corp. v. First State Ins. Co.*, 652 N.E.2d 613 (Mass. 1995); *see also Altchison v. Founders Ins. Co.*, 333 P.2d 178 (Cal. Ct. App. 1958).

*Mut. Ins. Co.*, 987 F.2d 415, 419-20 (7th Cir. 1993); *First S. Ins. Co. v. Jim Lynch Enters., Inc.*, 932 F.2d 717, 719 (8th Cir. 1991); *United States Fidelity & Guar. Co. v. Fireman's Fund Ins. Co.*, 896 F.2d 200, 203 (6th Cir. 1990); *Cincinnati Ins. Co. v. Metropolitan Properties, Inc.*, 806 F.2d 1541, 1544 (11th Cir. 1986).

In holding the endorsement applies only to negligent conduct, we note Westlake made no effort to show it negligently administered its stock plan or the trust fund. Nor could it credibly make such an argument on the record before us. Instead, Westlake directs us to the settlement agreement, stating the primary focus of the agreement centers on Mr. Masinton's commitment to compromise "all of his claims for damages based on [Westlake's] employment practices and on [Westlake's] administration of his employee benefits under the [Stock Plan]." Westlake seems to claim the language in the settlement agreement conclusively establishes the fact that its actions in relation to the trust fund qualify as "interpretation of employee benefits" as defined in the policy. However, Westlake's argument misses the point. Even if we were to accept Westlake's contention, its argument goes to whether withholding the trust fund money from Mr. Masinton qualified as an interpretation of employee benefits, [5] not to whether

---

[5] Much of the Westlake brief is dedicated to characterizing the company's actions as "interpreting employee benefits" under the policy. We question whether deciding to withhold Mr. Masinton's stock payment for alleged malfeasance qualifies as an

the interpretation was performed negligently.     Westlake did not negligently administer its employee benefit plans, therefore New Hampshire was under no duty to indemnify Westlake for the Masinton settlement.[6]

Our interpretation of the "negligent act, error, or omission" language of the endorsement is also dispositive of the second issue:  whether New Hampshire had a duty to defend Westlake.  While New Hampshire's duty to defend is broader than its duty to indemnify, Westlake fails to point to one fact in the record, reasonably discoverable by New Hampshire, that even remotely tends to show Mr. Masinton's suit might have led to accusations Westlake committed negligent acts, negligent errors, or negligent omissions in administering its stock plan.

---

"interpretation of employee benefits."  However, we do not reach the issue here.

[6] Westlake touches on several issues that warrant only brief treatment here.  The first centers around a perceived conflict between the "negligent act, error or omission" language and the definition of "administration of employee benefits," which includes "interpreting employee benefits."  Westlake argues the policy is ambiguous, or at least covers nonnegligent errors, because the interpretation of benefits will always be an intentional act, and therefore cannot be performed negligently.  First, the district court properly determined Westlake waived the issue of ambiguity by failing to plead it.  *New Hamshipre*, 11 F. Supp. at 1301 n.1.  Second, the argument has no merit – certainly, as the district court points out,  an employee benefit plan, or any contract, could be interpreted in a negligent manner.  Westlake also infers New Hampshire should have included an exclusion for intentional acts in the endorsement.  Given the clear, straightforward nature of the "negligent act, error or omission" phrase, an intentional acts exclusion was unnecessary.

Westlake's argument on this point suffers from a familiar flaw – it focuses on whether, and to what extent, Westlake's interpretation of employee benefits was at issue in Mr. Masinton's suit, instead of addressing the underlying requirement that a negligent interpretation occur in order for coverage to extend under the policy. Simply said, there was no possibility Mr. Masinton's suit would have triggered New Hampshire's liability under the policy.

Specifically, Mr. Masinton's First Amended Petition characterized Westlake's breach of trust as "intentional, willful, wanton and in reckless disregard for [Mr.] Masinton's rights." Nothing in this pleading, or in the multitude of letters exchanged between counsel during the Masinton litigation, pointed to any negligent activity by Westlake which might have been the basis for a claim from Mr. Masinton. To the contrary, Westlake's conduct was anything but negligent: its leadership consulted their attorneys, kept good records, and meticulously laid out the reasons for their refusal to release the money they held in trust for Mr. Masinton. While an insurer's duty to defend arises when "facts give rise to a 'potential of liability,'" New Hampshire was not bound to defend Westlake in an action "brought wholly outside any coverage obligations assumed in the policy." *Spruill Motors*, 512 P.2d at 406.

Conclusion

For these reasons, we conclude no genuine issue of material fact exists. Rather Westlake's actions clearly fell outside the endorsement language of the policy, and therefore, as a matter of law, New Hampshire had no duty to defend or indemnify Westlake in the Masinton suit. Accordingly, we **AFFIRM** the district court's grant of summary judgment in favor of New Hampshire.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge